

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-984

| | | |
|---|---|---|
| JENNIFER MATLOCK | | **Opinion Delivered** March 11, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV2013-1663] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | | HONORABLE PATRICIA JAMES, JUDGE |
| | APPELLEE | |
| | | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## CLIFF HOOFMAN, Judge

Appellant Jennifer Matlock appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her child D.W.[1] Matlock's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 6-9(i) (2014) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to Matlock, informing her of her right to file pro se points for reversal, which she has done. The Arkansas Department of Human Services ("DHS") and the minor child filed a joint response to Matlock's pro se points on appeal. We grant counsel's motion to withdraw and affirm the order of termination.

---

[1]Although the circuit court's order also terminated the rights of Prometheus Wilkins, putative father of D.W., he is not a party to this appeal.

On October 10, 2013, DHS filed a petition for ex parte emergency custody and dependency-neglect of then eight-month-old D.W. In the affidavit attached to the petition, DHS stated that D.W. was placed on a seventy-two-hour hold on October 7, 2013, after Wilkins and Matlock had been stopped and arrested by a police officer on felony charges. Wilkins was driving a stolen car from a "dope dealer" with Matlock and D.W. riding as passengers. Additionally, both parents tested positive for cocaine on October 8, 2013. The trial court granted the petition on October 10, 2013, finding that probable cause existed for the removal and ordering a probable-cause hearing on October 14, 2013. After the probable-cause hearing, the trial court noted that the parties had stipulated to probable cause existing for the removal. Additionally, the trial court ordered family services, permitted supervised visitation contingent on negative drug screens, and set reunification as the case goal.

After a December 9, 2013 adjudication hearing, the trial court found by a preponderance of the evidence that D.W. was dependent-neglected. DHS filed a motion to terminate reunification services on March 31, 2014, alleging that D.W. had been subjected to aggravated circumstances. After a review hearing, the trial court found that the parents were not in compliance, that DHS should continue to provide services, and that Matlock was to be screened for drugs. Subsequently, after a hearing on May 5, 2014, on DHS's motion to terminate reunification services, the trial court found by clear and convincing evidence that DHS's motion to terminate reunification services should be granted, found that there were aggravating circumstances, changed the case goal to termination of parental rights with adoption, and set a termination-of-parental-rights hearing.

SLIP OPINION

 

DHS formally filed a petition for termination of parental rights on May 23, 2014, and an amended petition for termination of parental rights on May 27, 2014. DHS alleged four separate grounds for termination with respect to Matlock under Arkansas Code Annotated § 9–27–341(b)(3)(B) (Supp. 2013): (1) that the court has found the juvenile or a sibling dependent–neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or stepparent or stepparents; (2) that the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life; (3) that the parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances; and (4) that other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

A termination hearing was held on August 4, 2014. Matlock testified at the hearing that D.W. was taken by DHS after she was arrested when she and D.W. were riding in a stolen car with D.W.'s father. When she was not incarcerated from approximately January 30, 2014, to April 16, 2014, she visited D.W. only five times, despite having transportation and the opportunity to visit every Monday. She also chose not to participate in or complete

any other services offered by DHS. She admitted that she did not visit or complete any services because she was "on drugs again" and she did not have a stable home. Her last date of employment was in October 2013. On her last visit with D.W., she had tested positive for cocaine, and she was arrested that same day. At the time of the hearing, she testified that she had been incarcerated for about three months and was serving a five-year sentence with ten years suspended and an estimated release date as early as August 8, 2015. She also testified that she had been diagnosed as bipolar and had been previously committed in Hot Springs, Arkansas. Therefore, she admitted that she was unable to take care of her child for at least a year and desired that her child be adopted by his aunt, as she did not want her "baby to be thrown from foster home to foster home." While incarcerated, she explained that she had taken anger-management classes and was taking substance-abuse and parenting classes. However, she again explained that she wanted D.W. to be able to stay in his current placement "until we get established for him to be with his aunt. I want him with his family. I may never actually be his mother, be back in his life again because I have a lot of things that I've got to get right with myself first. But I want him to stay where he at and to be with his aunt later on."

Bethany Taylor, a family-service worker with DHS, testified that D.W. was removed on October 7, 2013, after his parents had been arrested for riding in a stolen vehicle and tested positive for cocaine. She explained the case history and stated that the only service that Matlock minimally complied with was the visitation, visiting D.W. only five times out of a possible ten times during her release from incarceration. Matlock refused services, indicating

that it did not make sense for her to use the services and then have to go back into incarceration on her criminal charges. Taylor also testified that Matlock admitted to using drugs and could not take care of D.W. Therefore, she opined that it was in the child's best interest to be placed for adoption and for parental rights to be terminated.

Brenda Keith, an adoption specialist with DHS, testified that there was a high potential for D.W. to be adopted, as there were more than 400 matching families on the list. She also opined that because D.W. was young and did not have any major health or developmental delays, those factors were in favor of him being adopted. She explained that it was DHS's policy to consider qualified family members as adoptive parents along with other qualified families.

After the hearing, the trial court filed an order terminating parental rights on August 21, 2014, finding that there was clear and convincing evidence to support termination of Matlock's parental rights on two of the grounds alleged in the petition, specifically (1) that the child had been subjected to aggravated circumstances and (2) that other factors or issues arose subsequent to the filing of the original petition that demonstrate that placement of the juvenile in the custody of either mother or biological father is contrary to the juvenile's health, safety, or welfare, and that despite the offer of appropriate family services, the mother and biological father have manifested an incapacity or indifference to remedying those issues or factors, or rehabilitate their circumstances that prevent the placement of the juvenile in the custody of the parent. Additionally, the trial court found that termination was in the child's best interest, after considering the likelihood that the juvenile will be adopted and the potential harm on

5

SLIP OPINION

the health and safety of the juvenile if returned to the parent. This appeal followed.

In the no-merit brief, appellant's counsel correctly asserts that the only adverse ruling was the termination itself and that there can be no meritorious challenge to the sufficiency of the evidence supporting termination of Matlock's parental rights. A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013). Clear and convincing evidence is defined as that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing

of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

Based on the evidence presented, it was clear that termination of parental rights was in the best interest of the child and that DHS proved statutory grounds. There was evidence that the child was adoptable, and if returned to Matlock, the child would be at risk of harm. The trial court found clear and convincing evidence that two statutory grounds existed. First, the trial court found that "[t]he parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to [h]ave subjected any juvenile to aggravated circumstances." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*). "Aggravated circumstances" means "[a] juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]" Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*). Here, the trial court specifically found that there was little likelihood that services to the family would result in successful reunification. Second, the trial court found that "[o]ther factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the

7

custody of the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

Matlock was incarcerated at the time of the termination hearing for at least another year, and there was no evidence that she could provide for the child. Furthermore, she failed to attempt to remedy the issues prohibiting reunification even when she was not incarcerated by refusing services and openly admitting that she missed visitation with D.W. in part because she was using drugs and lacked a stable home. Furthermore, an adoption specialist testified that there was a high potential for D.W. to be adopted, with more than 400 matching families on the list, because of D.W.'s young age and lack of any major health or developmental delays. Thus, the trial court's decision to terminate Matlock's parental rights was not clearly erroneous, and we agree that any appeal challenging the sufficiency of the evidence would be wholly without merit.

Matlock filed a letter as her pro se points on appeal on January 2, 2015. In her letter, she argues that she wishes to appeal her case and that she wishes her son to be placed with his aunt or another family member. To the extent Matlock is contesting the sufficiency of the termination, the trial court's decision to terminate Matlock's parental rights was not clearly erroneous based on the evidence that was before the court, and appellant's counsel has adequately addressed the sufficiency-of-the-evidence argument in the no-merit brief. Additionally, Matlock's contention that D.W. should have been placed in the custody of a relative lacks merit. According to the public policy of this state, termination and adoption are preferred to permanent relative placement. *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670. Furthermore, the court's order does not specifically preclude a

family member from seeking D.W.'s adoption.

Thus, having carefully examined the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and HIXSON, JJ., agree

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, DHS Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.