

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-17-490

|  |  |
|---|---|
| KELVIN RASHEED WILLIS AND JONATHAN MERCHAND HARRIS APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** October 25, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-15-332]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is a combined appeal from an order terminating parental rights. Appellant Jonathan Harris appeals from the termination of his parental rights to his son, M.H., who was born on 12/16/2014. Appellant Kelvin Rasheed Willis (hereinafter, Kelvin Rasheed Willis shall be referred to as "Rasheed") appeals from the termination of his parental rights to his daughter, K.W., who was born on 4/8/2016. The mother of both children is Taniah Cotton. Taniah's parental rights were also terminated, but she has not appealed.

In his appeal, Jonathan challenges the sufficiency of the evidence, arguing that there was insufficient proof of statutory grounds and insufficient proof that termination of his parental rights was in his child's best interest. In Rasheed's appeal, he also challenges the sufficiency of the evidence as to the statutory grounds found by the trial court and the best interest of his child. In addition, Rasheed argues that the trial court erred in proceeding on

the termination petition because he was not appointed counsel until after the petition to terminate was filed, and also that he was denied basic due process from the outset of the case. We affirm the termination of both Jonathan's and Rasheed's parental rights.

We review termination-of-parental-rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case was initiated by appellee Arkansas Department of Human Services (DHS) when it filed a petition for emergency custody of M.H. on June 1, 2015. At the time the petition was filed M.H.'s father, Jonathan, was incarcerated after having been recently convicted of delivery of marijuana and sentenced to two years in prison followed by a four-

year suspended imposition of sentence.[1]  An attached affidavit of a family service worker stated that DHS had removed M.H. from his mother's custody based on the mother's history with drugs, multiple arrests for prostitution, homelessness, and failure to accept DHS services.  On the same day the petition was filed, the trial court entered an ex parte order for emergency custody of M.H.

With respect to M.H., a probable-cause order was entered on July 2, 2015, and an adjudication order was entered on November 10, 2015.  The adjudication order adjudicated M.H. dependent-neglected and set the case goal as reunification.

In a review order dated November 18, 2015 (but not filed until April 12, 2016) the trial court found that M.H.'s mother had complied with none of the case plan, had not remained clean and sober, and had not resolved her criminal troubles.  The review order noted that Jonathan had been released from prison on November 4, 2015, was currently living in a halfway house, and was to be discharged from the halfway house in January 2016. The trial court ordered Jonathan to comply with the conditions of his parole and to contact DHS to be assessed for services upon his release from the halfway house.

While the case involving Jonathan and M.H. was proceeding, the case involving K.W. commenced.  On April 11, 2016, DHS filed a petition for emergency custody of K.W.  The attached affidavit stated that K.W.'s mother (also the mother of M.H.) had tested positive for drugs throughout her pregnancy, that she was positive for methadone at the time of K.W.'s birth three days earlier, and that an emergency hold of the child was taken

---

[1]Jonathan was initially identified only as the putative father, but subsequent DNA testing confirmed him to be the father of M.H., as reflected in a review order.

at the hospital due to newborn/illegal-substance exposure. The petition stated that the mother was married to Rasheed Wilson[2] and that she identified him as K.W.'s father. The petition stated further that the mother denied knowledge of Rasheed's whereabouts and that, despite reasonable diligence, DHS was unable to ascertain Rasheed's whereabouts or address. On the same day the petition was filed, the trial court entered an ex parte order for emergency custody of K.W. In a probable-cause order dated April 13, 2016 (but not filed until May 12, 2016) the trial court found that the whereabouts of Rasheed Wilson were unknown, and also that the whereabouts of Jonathan Harris were unknown.

On July 25, 2016, the trial court entered an adjudication order and permanency planning order. In that order, K.W. was found to be dependent-neglected. The trial court stated in the order that K.W. was just over a month old at the time of the hearing (which was held on May 11, 2016) and remained hospitalized receiving treatment for methadone withdrawal. The trial court stated that K.W.'s birth certificate reflected that Kelvin Rasheed Willis was her father, and that a marriage license showed him to be married to K.W.'s mother. The style of the case was modified to identify K.W.'s father by his correct name of Kelvin Rasheed Willis instead of Rasheed Wilson. With regard to Jonathan, the trial court stated that he had been ordered to notify DHS upon his release from the halfway house, that he was released from the halfway house in January 2016, but that he did not contact DHS until May 1, 2016. Jonathan had failed to appear at the hearing despite having notice. The trial court found that the children's mother had not complied with the case

---

[2]The mother identified the father of K.W. as Rasheed Wilson. Several months later, it was determined that the actual name of the father was Kelvin Rasheed Willis, not Wilson.

plan and that her whereabouts were unknown. The trial court relieved DHS of providing further services to the mother or Jonathan and stated that, unless the whereabouts of Rasheed were ascertained, DHS was unable to provide services to him. The permanency plan for M.H. was termination and adoption, and the permanency plan for K.W. was reunification with the concurrent goal of termination and adoption.

DHS filed a petition to terminate the parental rights of Jonathan, Rasheed, and the mother, Taniah Cotton, on August 22, 2016. A review hearing was held on August 24, 2016, wherein Rasheed appeared represented by counsel, with Rasheed having been brought there from a local detention facility. In the review order, filed later on October 4, 2016, the trial court stated that Rasheed had been arrested on charges of forgery and for violating the terms of his suspended sentences. With regard to Jonathan, the trial court found that he was incarcerated with an expected release date of August 31, 2016. In the review order, the trial court noted that it had appointed counsel for both Rasheed and Jonathan.

The termination hearing was held on December 2, 2016. Jonathan did not appear at the termination hearing but was represented by counsel. Rasheed, who was still incarcerated, appeared at the hearing represented by counsel.

On March 28, 2017, the trial court entered an order terminating the parental rights of Jonathan, Rasheed, and the children's mother, Taniah Cotton. The trial court found by clear and convincing evidence that termination of parental rights was in both children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as

required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii). With respect to

both Jonathan and Rasheed, the trial court found clear and convincing evidence of the

following three statutory grounds under subsection (b)(3)(B):

>  (iv)  A parent has abandoned the juvenile.
>
>  . . . .
>
>  (vii)*(a)*  That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
>
>  . . . .
>
>  (ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>  *(3)(A)* Have subjected any juvenile to aggravated circumstance.
>  *(B)* "Aggravated circumstances" means:
>  *(i)* . . . [A] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification.

With respect to Jonathan, the trial court found clear and convincing evidence of the

following additional ground:

>  (i)*(b)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home of the noncustodial parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.

In the termination order, the trial court found that none of the parents had shown

the slightest inclination to accept services or rehabilitate himself or herself. With respect to

Jonathan, the trial court found that he had outstanding warrants. The trial court stated that

Jonathan had numerous opportunities to come forward but had failed to do so in any meaningful way. Jonathan failed to make himself available to DHS to receive services offered, and he never visited his child. With respect to Rasheed, the trial court noted that he had a significant criminal history and was incarcerated. The trial court found that Jonathan and Rasheed had not visited the juveniles at all.

Brittany Harp, the DHS caseworker assigned to this case, testified at the termination hearing. She recommended termination of parental rights as to all three parents. Ms. Harp stated that both children are adoptable, and that she did not think waiting until the parents either get out of jail or complete services was in the best interest of the juveniles. Ms. Harp testified that Jonathan had not visited his child at all. Jonathan was supposed to have contacted DHS when he was released from a halfway house in January 2016 but made no contact until several months later. According to Ms. Harp, Jonathan did contact DHS a couple of times after that but did not avail himself of any services.

Regarding Rasheed, Ms. Harp testified that Rasheed has a lengthy criminal history and was currently incarcerated. On cross-examination, Ms. Harp acknowledged that no one had ever contacted Rasheed about a case plan or provided him with any information about what he needed to do to try and work toward gaining custody of his child while he was in jail. Ms. Harp did not know whether Rasheed visited K.W. in the hospital after her birth while the child was going through withdrawal treatment, but she stated that after K.W. was released from the hospital Rasheed never called to check on her or set up visitation.

Rasheed testified that he has a significant criminal history for which he remained on multiple suspended impositions of sentences. Rasheed testified that he was at the hospital

when K.W. was born, and that he had visited her at the hospital after that, but that he was arrested in May 2016 (about a month after K.W.'s birth) and has been incarcerated since then. Rasheed stated that he was charged with theft by receiving and fraudulent use of a credit card, for which he was awaiting trial. Rasheed stated that he was confident that he would beat these charges because the photograph of the suspect was not him. Rasheed also stated that there was a petition to revoke his suspended sentences based on the current criminal charges, as well as an alleged battery committed while he was in jail, and nonpayment of fines. Rasheed admitted that he had failed to pay fines in violation of his suspended sentences. Rasheed testified that if he gets out of jail he will have a job and a place to live with a family member. Rasheed indicated that he had not had further contact with K.W. due to his incarceration. Rasheed asked the trial court to keep his daughter in foster care until he could be released from jail and have a chance to demonstrate stability.

We first address Jonathan's argument on appeal, which is that the trial court clearly erred in its finding that DHS proved statutory grounds necessary to terminate his parental rights, and also that there was insufficient evidence that termination was in M.H.'s best interest. As to statutory grounds, Jonathan contends that because he was incarcerated throughout the case he did not abandon his child. With respect to the remaining grounds found by the trial court, Jonathan argues that none of these support termination because he was never included in the case plan and DHS failed to provide him with services. In arguing that termination was not in his son's best interest, Jonathan does not contest the adoptability finding by the trial court, but asserts that there was no evidence of potential harm because DHS did nothing to ascertain whether he could safely parent the child.

SLIP OPINION

Only one ground is necessary to terminate parental rights. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96. We hold that the trial court did not clearly err in finding that Jonathan had subjected M.H. to aggravated circumstances, meaning that there is little likelihood that services to the family will result in successful reunification, and we limit our discussion to that statutory ground.

Although Jonathan states in his brief that he was incarcerated throughout the case, the record shows otherwise. Jonathan was released from a halfway house in January 2016 with instructions to contact DHS to be assessed for services, and he failed to make such contact until several months later in May 2016. Despite being apprised of the May 11, 2016 review hearing, Jonathan failed to attend that hearing. Although Jonathan was incarcerated again later in the case, he was released from incarceration prior to the termination hearing but failed to attend that hearing as well. Testimony of the DHS caseworker indicated that Jonathan had contacted DHS in September 2016 but appeared unwilling to avail himself of services and had no contact thereafter.

From the record presented, we find no error in the trial court's determination that there was little likelihood that services to Jonathan would result in successful reunification. In this case, Jonathan was out of jail for several months and showed little or no interest in cooperating with DHS or visiting his child. Although Jonathan contends that DHS failed to offer meaningful services, a finding of aggravated circumstances does not require that DHS prove that meaningful services toward reunification were provided. *See Draper v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58. In light of Jonathan's

demonstrated lack of interest in reunifying with his daughter, we conclude that this statutory ground was sufficiently satisfied.

We further conclude that the trial court did not clearly err in finding that termination of Jonathan's parental rights was in M.H.'s best interest. The potential harm to a child if custody is returned to the parent is a factor to be considered when making a best-interest determination, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Ware v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 480, 503 S.W.3d 874. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599. The testimony in this case showed that M.H. was adoptable and that Jonathan had no contact with him during the eighteen months between the child's removal and the termination hearing, which Jonathan did not attend. Having concluded that there was sufficient evidence to support a statutory ground and the best interest of the child, we affirm the termination of Jonathan's parental rights.

We now turn to Rasheed's appeal of the termination of his parental rights, wherein he challenges the sufficiency of the evidence supporting termination. Rasheed argues that DHS failed to prove any of the statutory grounds alleged in the petition, and that the trial court clearly erred in finding that termination was in K.W.'s best interest. However, we disagree.

As we stated previously, only one ground is necessary to terminate parental rights. *Wafford*, *supra*. We hold that the trial court did not clearly err in finding that Rasheed had subjected K.W. to aggravated circumstances because there is little likelihood that services to

the family will result in successful reunification. Thus, we affirm Rasheed's termination based on that ground.

The evidence showed that K.W. was born with drugs in her system and remained hospitalized for more than a month. Rasheed was arrested about a month after the birth of the child. While Rasheed claimed in his testimony that he had visited his daughter in the hospital before his incarceration, the trial court specifically found in the termination order that Rasheed had not visited his child at all. Credibility determinations in termination-of-parental-rights cases are left to the factfinder. *Villaros v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 399, 500 S.W.3d 763. Moreover, the evidence demonstrated that Rasheed had a lengthy criminal history including felony convictions for commercial burglary, theft of property, theft by receiving, possession of illegal drugs, and possession of drug paraphernalia. Rasheed remained on suspended sentences for these offenses, and at the time of the termination hearing he was incarcerated awaiting trial on new felony charges. In addition, there was a petition to revoke his suspended sentences based on additional criminal activity as well as failure to pay fines, which he admittedly failed to pay. The trial court stated that the best predictor of future behavior is past behavior, and in light of Rasheed's significant criminal history and current incarceration we cannot say the trial court clearly erred in finding that there was little likelihood that services to Rasheed would result in successful reunification. Although Rasheed points out that he was not offered DHS services, we reiterate that a finding of aggravated services does not require that DHS prove that meaningful services were provided. *See Draper, supra.* On this record, we affirm the trial court's finding that Rasheed had subjected K.W. to aggravated circumstances.

Rasheed also argues that termination of his parental rights was not in his child's best interest, but we disagree for much of the same reasons supporting the statutory ground. Because of Rasheed's persistent criminal troubles, there would be potential harm to the health and safety of the child if placed in his custody. Moreover, there was testimony that K.W. is adoptable. We hold that the trial court did not clearly err in finding that termination of Rasheed's parental rights was in K.W.'s best interest.

Finally, Rasheed claims on appeal that he was entitled to counsel at the outset of the dependency-neglect proceedings. Arkansas Code Annotated section 9-27-316(h)(1) provides, in pertinent part:

> (h)(1)(A) All parents and custodians have a right to counsel in all dependency-neglect proceedings.
> (B) In all dependency-neglect proceedings that set out to remove legal custody from a parent or custodian, the parent or custodian from whom custody was removed shall have the right to be appointed counsel, and the court shall appoint counsel if the court makes a finding that the parent or custodian from whom custody was removed is indigent and counsel is requested by the parent or custodian.
> (C) Parents and custodians shall be advised in the dependency-neglect petition or the ex parte emergency order, whichever is sooner, and at the first appearance before the court, of the right to counsel and the right to appointed counsel, if eligible.
> (D) All parents shall have the right to be appointed counsel in termination of parental rights hearings, and the court shall appoint counsel if the court makes a finding that the parent is indigent and counsel is requested by the parent.

We agree that, because Rasheed was married to K.W.'s mother and had legal custody of K.W., he was entitled to counsel under subsection (B) above.

However, in this case when the child was taken into DHS custody, K.W.'s mother incorrectly identified K.W.'s father as Rasheed Wilson instead of Kelvin Rasheed Willis. This was reflected in both the emergency-custody order and the probable-cause order, and because DHS did not have Rasheed's correct identity, it was unable to locate him or advise

SLIP OPINION

him of his right to counsel. The subsequent adjudication order and permanency-planning order correctly identified K.W.'s father as Rasheed Willis[3] but noted that Rasheed's whereabouts were unknown so DHS services could not be provided. Shortly thereafter, however, Rasheed was located and counsel was appointed to represent him at the first opportunity. Rasheed was represented by counsel at the review hearing as well as at the termination hearing. In *Briscoe v. Arkansas Department of Human Services*, 323 Ark. 4, 912 S.W.2d 425 (1996), the supreme court held that the trial court erred in not granting previous requests to appoint counsel, but held that the error was harmless because the final termination hearing aired all of the evidence presented at the hearings leading up to the termination hearing. In *Briscoe*, the supreme court noted that the parent was represented at the termination hearing and given an opportunity to challenge the evidence against her and to present evidence on her own behalf with the full assistance of counsel. In the present case, the trial court never denied any request by Rasheed for counsel, and the trial court appointed counsel for Rasheed at the earliest opportunity. We hold, under these circumstances, that Rasheed was not deprived of his right to assistance of counsel prior to the decision to terminate his parental rights.

Finally, we observe that under this point Rasheed also makes a brief argument contending he was denied due process. However, no specific due-process argument was raised below, and therefore this point is not preserved for review. *See Maxwell v. Ark. Dep't*

---

[3]The trial court found that this was ascertained when DHS was able to acquire the child's birth certificate.

*of Human Servs.*, 90 Ark. App. 223, 205 S.W.3d 801 (2005) (holding that we will not consider issues raised for the first time on appeal, even constitutional ones).

For the reasons stated herein, we affirm the termination of Jonathan's parental rights and we affirm the termination of Rasheed's parental rights.

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant Kelvin Rasheed Willis.

*Dusti Standridge*, for appellant Jonathan Harris.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.