LARRY D. VAUGHT, Judge
Shelby Murphy appeals the order entered by the Union County Circuit Court terminating her parental rights to her daughter, D.M. (born February 3, 2016). Murphy's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and case law, stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9 (2017); Linker-Flores v. Ark. Dep't of Human Servs. , 359 Ark. 131, 194 S.W.3d 739 (2004). Our court clerk mailed-restricted delivery, return receipt requested-certified copies of counsel's motion and brief to Murphy's last-known addresses informing her of her right to file pro se points for reversal. Murphy has not filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) has not filed a brief. We affirm the circuit court's decision to terminate Murphy's parental rights and grant counsel's motion to withdraw.
On June 20, 2016, DHS received reports of child maltreatment and environmental neglect regarding D.M. Specifically, it was reported that Murphy was using drugs while holding D.M. and that Murphy's home was filthy. That day, a DHS investigator went to Murphy's home and found the home was messy, not filthy, and that Murphy would not submit to a drug test. However, Murphy did submit to a drug test on June 28, 2016, and she tested positive for THC, methamphetamine, and amphetamine. DHS took custody of D.M., and on July 5, 2016, filed a petition for emergency custody and dependency-neglect. An ex parte order was entered on July 5, 2016.
D.M. was adjudicated dependent-neglected following a hearing on August 1, 2016, based on Murphy's drug use and *468 environmental neglect. In its adjudication order, the circuit court directed Murphy to follow the case plan; obtain and maintain stable, clean, adequate, and suitable housing; obtain and maintain stable employment; complete parenting classes; submit to random drug testing and test negative on all tests; not use or possess illegal drugs; complete a drug assessment and follow the recommendations; and attend and participate in individual counseling. The court set the goal as reunification and ordered family services. Review hearings were held on November 21, 2016, and March 6, 2017.
After a June 19, 2017 permanency-planning hearing, the circuit court entered an order finding that Murphy had not made significant, measurable progress toward achieving the goals established in the case plan. The court further found that Murphy had not diligently worked toward reunification, did not consistently visit D.M., did not comply with the case plan, did not complete intensive outpatient-drug treatment, did not complete substance-abuse treatment with the ACTS program,[1] did not complete parenting classes, and had been jailed twice during the case.
On July 31, 2017, DHS filed a petition to terminate Murphy's parental rights alleging the failure-to-remedy, abandonment, and aggravated-circumstances grounds. DHS also alleged that termination of Murphy's parental rights was in D.M.'s best interest.
At the termination hearing, DHS caseworker Eugenia Ford testified that D.M. had been removed from Murphy's custody on June 28, 2016, due to Murphy's inadequate supervision and drug use. Ford stated that the original goal of the case was reunification and that DHS offered the following services to Murphy: parenting classes; referrals for drug assessments, mental-health counseling, and the ACTS program; random drug screens; drug treatment; and visitation. Ford testified that Murphy maintained stable housing for only three months during the case, was in jail three times during the case, and was incarcerated at the time of the termination hearing. Ford said that D.M. had been in foster care for 446 days, and of that time, Murphy had been incarcerated for 291 days. Murphy was not in jail for 155 days and had fifty-seven opportunities to visit D.M., yet she attended only fourteen visits. Murphy's last visit with D.M. was in late May 2017. Ford said that when Murphy was not in jail, she was difficult to locate.
Ford also stated that Murphy did not complete parenting classes. And although Murphy tested negative for illegal drugs several times in February, March, and May 2016, Murphy tested positive for methamphetamine on July 14, 2016.[2] Ford testified that Murphy admitted using methamphetamine in April 2017. Ford further stated that while Murphy completed the drug assessment, she did not complete the intensive outpatient treatment that was recommended. Her last treatment was on April 7, 2017. Murphy was also ordered to complete ACTS treatment; however, she failed to complete that treatment as well. Ford said that Murphy was discharged from counseling in April 2017 for nonattendance. Ultimately, Ford requested that the circuit court grant DHS's petition to terminate Murphy's parental rights to D.M.
Crystal Williams, a DHS adoption specialist, testified that D.M. is healthy and young and that there are no known medical *469 or physical barriers to her adoption. Williams further stated that using DHS's data-matching tool, there were 398 adoptive families who matched a child with D.M.'s characteristics and that DHS knows of specific families who may wish to adopt her.
Murphy testified that she heard Ford's testimony and did not disagree with it. She admitted that she was currently incarcerated, adding that she was scheduled to attend a court hearing the next day and that she intended to plead guilty in exchange for five years' probation. Murphy also admitted that if released, she did not know where she was going to live but that her family was going to help her. Murphy conceded that she has a drug problem and needs help. Murphy stated that she participated in some outpatient drug treatment but felt that she needed an inpatient program. She also testified that she attended two counseling sessions and then stopped because she "got high again."
At the conclusion of the hearing, the circuit court found that DHS had met its burden of proving that the aggravated-circumstances ground supported termination of Murphy's parental rights and that termination was in D.M.'s best interest. The circuit court entered a termination order on November 29, 2017.[3] This no-merit appeal followed.
We review termination-of-parental-rights cases de novo. Roland v. Ark. Dep't of Human Servs. , 2018 Ark. App. 333, at 3, 552 S.W.3d 443. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. Id. , 552 S.W.3d at 445. The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. Id. , 552 S.W.3d at 445. The circuit court must also find that one of the grounds stated in the termination statute is satisfied. Id. , 552 S.W.3d at 445. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. Id. , 552 S.W.3d at 445. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. Id. , 552 S.W.3d at 445. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. Id. , 552 S.W.3d at 445.
In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Id. , 552 S.W.3d at 445 (citing Ark. Sup. Ct. R. 6-9(i)(1) (2017) ). The petition must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Id. at 3-4, 552 S.W.3d at 445-46 (citing Ark. Sup. Ct. R. 6-9(i)(1)(A) ). The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Id. at 4, 552 S.W.3d at 445 (citing Ark. Sup. Ct. R. 6-9(i)(1)(B) ).
*470 Counsel correctly states that the only adverse ruling in this case was the circuit court's termination decision. Counsel contends that any challenge to this finding would be frivolous.
In terminating Murphy's parental rights, the circuit court found that DHS proved that Murphy subjected D.M. to aggravated circumstances, meaning there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A), (B)(i) (Supp. 2017). In support of its aggravated-circumstances finding, the circuit court found that Murphy had spent a great portion of time during this case in jail. The court further found that had Murphy been released from jail the day after the termination hearing and given additional time to work on the case plan, reunification would not result. The court found that when Murphy was out of jail, she had "not done much to comply with the case plan and court orders." The evidence supports this finding.
For instance, when out of jail, Murphy continued to use illegal drugs as demonstrated by a positive drug test for methamphetamine. Murphy conceded at the termination hearing that she has a drug problem and needs help, yet she did not complete intensive outpatient drug treatment, did not complete the ACTS substance-abuse treatment program, did not complete counseling, and did not complete parenting classes. Furthermore, when provided fifty-seven opportunities to visit D.M., she visited the child only fourteen times. She failed to obtain suitable housing. When out of jail, Murphy was difficult to locate. In February and March 2017, Ford went to Murphy's residence, but no one would come to the door. Ford testified she could not locate Murphy in April 2017. According to Ford, Murphy would report that she was staying with friends but never provided an address. Murphy failed to attend the permanency-planning hearing on June 19, 2017.
Based on this evidence, we hold that the circuit court did not err in finding that there was little likelihood that services to Murphy would result in successful reunification. This evidence first demonstrates that Murphy could not stay out of jail, and when she was out of jail, she showed little or no interest in cooperating with DHS or visiting D.M. We have recognized that a parent's past behavior is often a good indicator of future behavior. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, at 2, 489 S.W.3d 182, 184. In light of Murphy's demonstrated lack of interest in reunifying with her daughter, we conclude that there is no merit to the appeal of the aggravated-circumstances ground. Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, at 9-10, 538 S.W.3d 842, 849 (affirming a termination order based on aggravated circumstances because the evidence showed that when the father was out of jail, he showed little or no interest in cooperating with DHS or visiting his child).
Counsel for Murphy also contends that it would be frivolous to seek reversal of the circuit court's best-interest findings. Facts relevant to those finding are as follows. The DHS adoption specialist testified that D.M. is healthy, young, and adoptable. The specialist further stated that there were 398 adoptive families who matched a child with D.M.'s characteristics and that DHS knows of specific families who may wish to adopt her. This evidence has been held sufficient to support the likelihood-of-adoptability consideration within the best-interest analysis. Matlock v. Ark. Dep't of Human Servs. , 2015 Ark. App. 184, at 8, 458 S.W.3d 253, 257-58 (holding that there was no merit to a best-interest challenge with respect to the adoptability consideration *471 when an adoption specialist testified that there was a high potential for the child to be adopted, with more than 400 matching families on the list, because of the child's young age and lack of any major health or developmental delays).
Regarding potential harm, the evidence showed that Murphy tested positive for methamphetamine during the case and that she agreed that she has a drug problem. Yet Murphy refused to complete the drug-treatment programs, counseling, or parenting classes. She was incarcerated three times during the case and was incarcerated at the time of the termination hearing. While she testified that she hoped to be released from jail the day following the termination hearing, she added that she did not have housing or employment arranged upon her release. There was also evidence that when she was not incarcerated, she was difficult to locate-even evasive-and she did not visit D.M. regularly.
Under these facts, returning D.M. to Murphy's custody would subject D.M. to potential harm. An addicted parent's illegal drug use and instability may demonstrate a risk of potential harm for the children. Robinson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 262, at 5, 520 S.W.3d 322, 325 (holding that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case); Matlock , 2015 Ark. App. 184, at 8, 458 S.W.3d at 257-58 (holding that there was no merit to a sufficiency challenge because the mother minimally visited her child, refused all other services, was incarcerated multiple times during the case, was incarcerated at the time of the termination hearing, did not have a stable home, and admitted drug use). Accordingly, we hold that counsel has adequately explained why there is sufficient evidence to support the court's best-interest finding and hold that the appeal of that issue would be wholly frivolous.
In sum, we hold that counsel has adequately addressed the sufficiency of the evidence in the no-merit brief and complied with the requirements of Linker-Flores and this court's rules. Accordingly, we affirm the circuit court's termination order and grant counsel's motion to withdraw.
Affirmed; motion to withdraw granted.
Glover and Hixson, JJ., agree.

The ACTS program is a local faith-based outpatient substance-abuse program.

Ford testified that Murphy tested positive additional times, but Ford did not testify to the dates of those tests.

The order also terminated the parental rights of Wesley Murphy, D.M.'s father. He is not a party to this appeal.