Cite as 2025 Ark. App. 70

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-198

| | |
|---|---|
| JOHN DAVID HARRIS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered February 5, 2025<br><br>APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 42PJV-22-5]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**MIKE MURPHY, Judge**

This is an appeal from the order of the Logan County Circuit Court that terminated appellant John David Harris's parental rights to his children, twins MC1 and MC2 (born February 1, 2021).[1] Harris's counsel has filed a motion to withdraw and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), stating that there are no issues of arguable merit for appeal.

Our court clerk mailed a certified copy of counsel's motion and brief to Harris's last-

---

[1]This is the second appeal involving these children. This court affirmed the termination of their mother's parental rights in *Harris v. Arkansas Department of Human Services*, 2024 Ark. App. 514.

known address informing him of his right to file pro se points for reversal. Harris has not filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) has not filed a brief. We affirm the order terminating Harris's parental rights and grant his counsel's motion to withdraw.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Harper v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884.

The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then

2

counsel may file a no-merit brief and move to withdraw. Ark. Sup. Ct. R. 6-9(j)(1). The brief must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). The brief must also include a statement of the case and the facts containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B); Ark. Sup. Ct. R. 4-2(a)(7).

Counsel proposes that there were two objections made at the hearing, but one was sustained in the appellant's favor, and the other did not receive a ruling; therefore, the only remaining adverse ruling was the termination itself. In our review, we found five objections made at the hearing. Three did not receive rulings, one was not adverse to Harris, and the other was made as part of counsel's closing argument to the sufficiency of all of the evidence. The last argument was that Harris was incorrectly found to be a parent.[2]

---

[2]We note that counsel failed to brief a few adverse rulings. Although counsel failed to address why these adverse rulings do not present meritorious grounds for reversal, a counsel's failure to address every adverse ruling does not always require rebriefing. *See Sartin v. State*, 2010 Ark. 16, at 1, 362 S.W.3d 877, 878 (holding that the failure to list and discuss all adverse rulings in a no-merit termination-of-parental-rights case does not automatically require rebriefing if the ruling would clearly not present a meritorious ground for reversal); *see also Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153 (affirming termination of parental rights by addressing a statutory ground that was omitted from counsel's brief). None of the unbriefed adverse rulings present meritorious grounds for reversal; therefore, we will not require rebriefing. *Brown v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 303, 521 S.W.3d 183.

The facts surrounding the termination of Harris's parental rights follow.

On March 30, 2022, DHS received a call through the child-abuse hotline from an ER doctor at Mercy Hospital in Ozark who reported that two young children (one of whom was MC1) needed to be flown to Arkansas Children's Hospital due to head and neck injuries they sustained in a car accident. They had not been correctly restrained in car seats. Their mother was driving. At the scene of the accident, the mother was arrested on multiple charges and taken to jail. DHS exercised emergency custody of MC1. The following day, DHS exercised emergency custody of MC2, who had been with a family friend.

An emergency custody order was granted, and a probable-cause hearing was set for April 6, 2022. Harris was not present at that hearing, despite being named in the petition and provided notice. Nor was Harris present at the adjudication hearing. The children were adjudicated dependent-neglected, and that order named Harris as the father. At the September 7 review hearing, the court found that Harris was not working the case plan, was not following the court's orders, and had minimal contact with DHS. On October 20, 2023, DHS filed a petition to terminate Harris's parental rights. That petition alleged the following grounds supporting termination: twelve-months failure to remedy by a noncustodial parent, Ark. Code Ann § 9-27-341(b)(3)(B)(i)(*b*); failure to provide significant material support or maintain meaningful contact, Ark. Code Ann. § 9-27-341(b)(3)(B)(ii) (*a*); subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*); abandonment, Ark. Code Ann. § 9-27-341(b)(3)(B)(iv); and aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*).

At the termination hearing, Harris testified that he had not seen his children since January 2022. He said he was never offered any services, and the first time he appeared in court was in October 2023 when the children's mother's parental rights were terminated. He tested positive for methamphetamine and amphetamines at the October hearing. During the termination hearing, the court recessed twice, once at the beginning and again an hour and a half later. Harris could not produce a specimen for a drug test either time. He did not have a driver's license or a vehicle. He had pending charges.

The caseworker, Brandy Ezell, testified that she contacted Harris when the children were taken into DHS custody. She also texted him about the probable-cause hearing. He responded to both of those messages, but she did not hear from him again until July 10, 2023, when she and another DHS employee discovered he was at the detention center and went to visit him there. She had tried to get in touch with him before that but without any success. Ezell said that, when they were at the jail, she gave Harris her card, told him about his children in care, and explained the services available to him. She gave him a drug test. He said he would contact her when he got out of jail, but she did not see or hear from him again until the October hearing. She testified that he failed a drug test that day. At that hearing, she again told him about services and sent him the paperwork to have a drug-and-alcohol assessment. She had no further contact with him until November 10, when she missed his call. He left a voicemail and asked that he be given his kids. When she tried calling him back three days later, the line had been disconnected. Ezell testified that Harris was never refused any visits with his children, but he never once asked to see them. She said the

children are adoptable and face potential harm if placed in his custody due to his instability, drug use, and being in and out of jail.

Harris's counsel made closing arguments addressing why the evidence was insufficient for each of the grounds pleaded by DHS. At the close of all the evidence and arguments, the court then ruled from the bench:

> First of all, I find by clear and convincing evidence these children are adoptable. I find there are no barriers to adoption. And I find also that although the Department has not offered very many services to Mr. Harris, that adoption—that termination is in the best interest of these children.

> And I'm going to try to, the best I can, go over the timeline on this. Mr. Harris went to prison and he got out in 2020 before this case opened for apparently issues with drugs. Those issues with drugs have continued through the pendency of this case. When he was eventually able to be drug tested, he tested positive for methamphetamine, amphetamine, and THC. He's mumbled something about him having a medical marijuana card. Maybe he does and maybe he doesn't. I don't know. That's not come out.

> Before the pendency—the Department did offer a drug and alcohol assessment. He's not provided any evidence. He says he took it. He's not provided any evidence he did. That's the one service the Department did offer because it obviously was needed.

> Before this case started, he refused to take a drug test unless he was ordered to. This Court asked him to and he did. Once, and he said he couldn't go. At the conclusion of this hearing, after an hour and a half, approximately, of this hearing, the Court asked him to do another one. He still can't go, which leads the Court to believe he is still using illegal drugs.

> Now, these kids—and regarding the abandonment issue, these children—he—he has testified he's known that these children are his children. He hasn't seen them since January of 2022. We're in December of 2023. He hasn't seen them since before they went into care in March of 2022. They've been in care since March of 2022. He's made no effort to see them at any time since then.

> He was notified—I find the caseworker to be credible—of the probable-cause hearing. And he called her a "drug addict" and said he would have her job. And then, he pretty

6

much fell off the radar. He was incarcerated from May until September for a felony. And he has got out sometime in September. He said that's been reduced to a misdemeanor, but he's still facing these charges.

By his own testimony, I agree with the ad litem, he doesn't have a car, he doesn't have a driver's license, he has inappropriate housing, he has a studio apartment for—and we're talking about twins—very young children. Maybe two-and-a-half-year-old children or a little bit older. He doesn't have sufficient income. He has approximately $40 a month left over after he pays his rent.

I certainly find aggravating circumstances, even though the Department has not offered very many services. And I think the Department in the future, ought to make an effort to try to offer more services. Maybe get the case plan signed, but again, I do find it credible. It's just been hard for the Department to—to keep in contact with him and the case—the court orders are replete that they've—they've had trouble locating Mr. Harris. But I do find aggravating circumstances, especially with the drug use.

He just got out of jail, when the Department was able to finally drug test him. He tested positive for methamphetamines, and amphetamines. After his own testimony, apparently that's what he went to prison for. He went to prison for some sort of drugs. And since then, he won't submit or he cannot provide a clean drug test. So obviously there is a—there's a significant drug issue here.

And taking into account the instability, the no home, the no driver's license—or the not appropriate home, the no driver's license, the inappropriate—or not enough income. And I do not find Mr. Harris to be credible in his testimony.

I think these—these children need permanency. And I find that there would be little likelihood if there were continued services—especially what has happened today—little likelihood for continued—any continued services to—would result in reunification. And again, these children—these children need permanency. And I'm going to find that there would be a potential harm for the children to be placed with Mr. Hunt—or Mr. Harris.

And essentially, I do find the caseworker to be credible when she said, He just wants the kids. He doesn't want to work the case plan.

And I find little likelihood if we did have—if we did continue to offer services that there could be reunification.

Given this evidence, we agree with counsel that the circuit court correctly found that there was little likelihood that services would result in successful reunification, thus meeting the "aggravated circumstances" ground found at Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A), (B)(i)*. Harris had not seen his children in nearly two years, knew they were in DHS custody, and made no effort to visit them, cooperate with DHS, or regain custody. If a parent shows a lack of interest in reunification, it stands to reason that there is little likelihood that services supporting reunification would be successful. *See Murphy v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 426, at 7, 560 S.W.3d 465, 470 ("In light of Murphy's demonstrated lack of interest in reunifying with her daughter, we conclude that there is no merit to the appeal of the aggravated-circumstances ground."); *Willis v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 559, at 9–10, 538 S.W.3d 842, 849 (affirming a termination order based on aggravated circumstances where the father showed little or no interest in cooperating with DHS or visiting his child). Nor is there any merit to a challenge of Harris's status as a "parent." Harris was found in a written order to be the twins' parent at the adjudication hearing, thus satisfying the parental element of the statutory ground. *See generally Bevell v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 138, at 9, 662 S.W.3d 259, 265.

Next, counsel states that any argument challenging the circuit court's "best interest" findings would be wholly frivolous. Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted and the potential harm to the health and

safety of the juvenile if returned to the custody of the parent. In its order, the court specifically found that it had considered adoptability and potential harm to the children. Thus, the court considered both best-interest factors.

DHS offered the undisputed testimony of the family-service worker that the children are young, smart, gorgeous, and well adapted. She stated there are no barriers to adoption. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *See, e.g.*, *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App, 121, 543 S.W.3d 540. There would be no meritorious challenge to the adoptability issue.

We likewise hold that there would be no merit to an appeal of the potential-harm prong of the best-interest analysis. Placing the children in Harris's custody would result in a risk of harm to the children. Harris had not visited the children, had not availed himself of any services, used drugs during the case, and had pending unresolved criminal charges, all of which demonstrate a risk of future potential harm. *See, e.g.*, *Matlock v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 184, at 8, 458 S.W.3d 253, 257–58 (holding potential harm existed when the mother minimally visited her child, refused all other services, was incarcerated multiple times during the case, did not have a stable home, and admitted drug use).

Affirmed; motion to withdraw granted.

BARRETT and HIXSON, JJ., agree.

*Eden Law Firm*, by: *Kimberly Eden*, for appellant.

One brief only.