Treenya MAXWELL *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 03-1007                                                    205 S.W.3d 801

Court of Appeals of Arkansas
Opinion delivered March 9, 2005

*David Mark Gunter*, for appellant.

*Gray Allen Turner*, for appellee.

TERRY CRABTREE, Judge. On January 28, 2003, the Hempstead County Circuit Court terminated the parental rights of the appellant, Treenya Maxwell, to her minor children, TM, DA, and CM, pursuant to Ark. Code Ann. § 9-27-341 (Repl. 2002). In this appeal, appellant argues that the trial court's decision was clearly erroneous regarding T.M. In addition, she challenges the constitutionality of the Arkansas statutes permitting the termination of her parental rights. We note that appellant filed three separate sets of appellate briefs, one for each child, for our review. Case number CA 03-1007 is directed to the oldest child, TM; CA 03-1006 concerns the middle child, DA; and CA 03-1008 is targeted to the youngest child, CM. We affirm the trial court's decision in regard to T.M.

Appellant was born on September 2, 1984. Three of her children are the subject of this appeal. TM was born on December 26, 1998; DA was born on January 23, 2000; and CM was born on July 1, 2001.

The facts of this case are largely undisputed. TM and DA were removed from appellant's custody on June 30, 2000, following a call made by appellant to the Hope Police Department. Appellant reported to the police that, upon returning to her apartment, she could not find DA, her five-month-old daughter. Officer Jimmy Courtney and his supervisor responded to appellant's call. The officers learned that appellant had left DA and TM inside an apartment without supervision for at least four hours. After searching the apartment for thirty minutes, Officer Courtney's supervisor heard DA crying in a back bedroom. The baby was found fully tangled in a blanket and lodged between a bed and the wall. At that time, appellant, who was fifteen years old, was arrested for endangering the welfare of a minor. As a result,

Arkansas Department of Human Services, the appellee, filed a petition for emergency custody, alleging in part that the children were neglected as defined by Ark. Code Ann. § 9-27-303(4)(27) & (37), and that removal from parental care was necessary to protect their health, safety, and physical well-being. As a result, the trial court entered an order of emergency custody on June 30, 2000, placing custody of TM and DA with appellee.

In an order dated July 6, 2000, the trial court found probable cause that the emergency conditions that necessitated removal of the juveniles from appellant's custody continued to exist such that it was necessary for juveniles to remain in appellee's custody. The probable-cause order authorized visitation and ordered appellee to develop a case plan for the minor children and family. Appellee prepared a plan that required appellant to participate and cooperate in counseling, to establish and maintain a permanent residence, to ensure adequate supervision of her children in her absence, and to ensure the health and safety of her children.

The trial court adjudicated TM and DA dependent-neglected on August 3, 2000, ordering that the children remain in the custody of appellee and establishing reunification as the goal of the case. Appellant was ordered to have an 8:00 p.m. curfew each night, to attend school on a regular basis, to submit to random drug testing, and to participate in and accept reunification services as set out in the case plan.

At a review hearing on September 7, 2000, the court ordered appellee to prepare a permanency plan when it found that appellant had failed to comply with the case plan by not attending counseling or parenting classes and making no effort toward reunification. The court repeated this finding in a permanency planning order of November 27, 2000; in that order, appellant was ordered to attend birth-control classes and parenting classes.

A permanency planning order of January 4, 2001, reflects that the goal of the case remained reunification and that appellant had been working toward reunification. The court noted that reunification was expected to occur by April 5, 2001, which was "within a time frame . . . consistent with the juveniles' developmental needs." Appellant was ordered to complete her education, to complete the case plan, and to participate in counseling, in parenting classes, and in birth-control classes. These orders were repeated in a review order of April 5, 2001, after the court found that appellant had not been as diligent as she had before the January

hearing. The court found that return of the juveniles to appellant's custody was contrary to their welfare, and that continuation in appellee's custody was in their best interests and necessary for the protection of their health and safety. The goal of the case continued to be reunification, and the projected date for the juveniles to return home was June 7, 2001.

On October 4, 2001, appellee petitioned the court for termination of the parental rights of appellant regarding TM and DA, as well as for termination of the parental rights of the juveniles' fathers. The trial court denied the petition. However, the trial court ordered appellant and her newborn son, CM, to be placed in the foster home where TM and DA resided with Larona McKinney. At a hearing before the circuit judge, McKinney testified that she provided parenting services to appellant in the foster home. McKinney demonstrated to appellant how to properly bathe, dress, feed, and supervise the children. McKinney even went as far as to make a daily chart for appellant to record the necessary tasks to care for the children. Appellant stayed in the foster home for five to six months, until she turned eighteen. At that time, appellant chose to leave her children in the foster home and move in with her mother, Patricia Maxwell, and appellant's ten siblings.

Soon thereafter, appellant was allowed unsupervised weekend visits with the children in Patricia Maxwell's home. In July 2002, an injury involving TM occurred during an extended visit with appellant. While TM was being cared for by a sixteen-year-old child, TM fell into a bathtub filled with water and suffered a severe cut near his eye. After learning of the injury, appellant chose not to seek medical attention for TM. Days later, after TM was returned to his foster home, McKinney presented TM to a physician. The physician stated that he would need to perform minor outpatient surgery. The wound needed stitches and because immediate medical attention was neglected, the physician needed to apply anesthesia and re-cut the wound.

A review of the case regarding TM, DA, and CM was held on June 5, 2002. Again, the court found that return of the juveniles to the custody of their parents was contrary to the welfare of the juveniles, and that continuation in appellee's custody was in the juveniles' best interests and necessary to the protection of their health and safety. The goal of the case continued to be reunification with appellant. At a permanency planning review on September 19, 2002, however, the goal was changed from reunification to

termination of parental rights and adoption. The court found that appellant had not been compliant with the services from appellee aimed at reunification and that she had done nothing required to achieve reunification beyond visiting with her children.

On November 26, 2002, appellee filed a petition for termination of parental rights and adoption regarding TM, DA, and CM. The following grounds were alleged with regard to each of the three minor children:

> that the juvenile has lived outside of the home of the parents for a period of twelve (12) months and the parents have willfully failed to provide significant material support in accordance with the parents' means or to maintain meaningful contact with the juveniles;

> that the parents have been found by a court of competent jurisdiction to have subjected the child to aggravated circumstances;

> that the parents have abandoned the juvenile;

> that the juvenile has lived outside of the home of the parents for period of twelve (12) months and despite a meaningful effort by the Department to correct the conditions which caused removal, those conditions have not been remedied by the parent.

After conducting a hearing on January 7, 2003, the trial court granted the petition for termination of parental rights. The court's findings of fact included the following:

> c. Treenya Maxwell was ordered to attend school on a regular basis, submit to random drug screens, attend counseling and parenting classes, and observe an 8:00 curfew.

> d. After one year of insufficient compliance with the court's orders, the Court ordered Treenya Maxwell [to be] placed into foster care herself, and ordered that [CM], who had been born since the other children had been taken, . . . be placed in foster care as well. . . .

> e. The Department placed Treenya Maxwell in the same foster home with her other three children, and attempted to provide daily instruction to Treenya Maxwell, as provided by the foster parent, regarding the proper care of her children.

> f. Treenya Maxwell exhibited limited motivation to assume primary caregiver responsibilities, and after five months in the same

foster home with her children, requested to be removed from the foster home and return to her mother's home, despite the fact this decision meant she would no longer see her children on a daily basis.

g. Treenya Maxwell has had opportunity to visit her children since that time, with visits available to her each weekend.

h. Treenya Maxwell has been found, as recently as July, 2002, to be leaving her children without adult supervision.

i. In July, 2002, there was an incident during an extended visit wherein Treenya's children were being cared for by another child, with no adult present, and one of Treenya's children was injured by falling in a bathtub filled with water.

j. No person sought medical attention for the cut the child suffered from this fall until three days later, when the Department was made aware of the injury.

k. The Department promptly sought medical attention, which at this point required the physician to re-cut the injury and stitch it, as it needed stitches at the time it . . . occurred.

l. The Court concludes that during the most recent weekend visits, the juveniles were frequently in the care of persons other than Treenya Maxwell.

m. The Court concludes that the same problems which led to the removal of Treenya Maxwell's oldest two children in June, 2000 continue to pose a risk of harm to her children as recently as July, 2002.

n. Treenya Maxwell has not complied with the Court's orders which were designed to achieve reunification.

o. The Department of Human Services has made every reasonable effort to provide services to Ms. Maxwell in the attempt to reunify her with her children, specifically, foster care services and parenting instruction in a home with her children, referral to counseling and parenting classes, referral to adult education and assistance in completing necessary tasks to qualify for GED classes, visitation arrangement and transportation to facilitate visitation, and referral to

housing assistance, and these constitute a meaningful effort to eliminate the conditions that caused removal.

p. Treenya Maxwell has admitted that she does not know how she would take care of three children under the age of five (5) years, and indeed has no visible means of support that would enable her to do so.

q. Treenya Maxwell does not now contend that the children can be returned safely to her care at this time.

r. Treenya Maxwell has propounded no suitable relative of hers who would be willing or able to be a permanent caregiver for her children.

s. The children need permanency, and [TM and DA] have been in foster care for more than thirty (30) months, or more than half of their lives.

t. Based on Treenya Maxwell's past compliance with the Court's orders, the Court has no basis to conclude that the children will be able safely to return to Treenya Maxwell within a time frame that will meet their developmental needs, and Treenya Maxwell does not specify a date by which she thinks . . . her children could safely return to her care.

When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Browning v. Arkansas Dep't of Human Servs.*, 85 Ark. App. 495, 157 S.W.3d 540 (2004). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Crawford v. Arkansas Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *J.T. v. Arkansas Dep't Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3) (Repl. 2002), the facts warranting termination of parental rights must be proven by clear and convincing evidence. In

reviewing the trial court's evaluation of the evidence, we will not reverse unless the trial court clearly erred in finding that the relevant facts were established by clear and convincing evidence. *Baker v. Arkansas Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). To conclude that a trial judge made a clearly erroneous decision, we must be left with a definite and firm conviction that a mistake has been made. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Johnson v. Arkansas Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002). Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Ullom v. Arkansas Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Where there are inconsistences in the testimony presented at a termination hearing, the resolution of those inconsistencies is best left to the trial judge, who heard and observed these witnesses first-hand. *Dinkins, supra.*

Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a) (Repl. 2002), provides that the trial court may terminate parental rights when "a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions that caused removal, those conditions have not been remedied by the parent."

Appellant asserts that the trial court's finding regarding her return to her own mother's home is not relevant to whether she remedied the circumstances that led to her children's removal from her care. She notes that the court approved appellee's recommendation that she have a trial visit to her mother's home, and she asserts that she afterwards provided care to her children on weekends and for one full week. She notes that the court suggested the thirty-day trial visit after a weekend visit had gone well and that the court advised her that she was doing better with her children. Appellant also takes issue with the court's findings regarding one of her children being cut in the bathtub while no adult was present. She asserts that it was reasonable to have left a three-year-old in the care of a sixteen-year-old, that her own mother patched up TM, and that Maxwell herself alerted the foster mother that TM needed

attention. She contends that the incident "should not be used to terminate her rights" because neither appellee nor the court took any action following the incident.

We do not agree with appellant's arguments that the evidence was insufficient to support its conclusion that her parental rights should be terminated regarding T.M. Appellant's arguments essentially are concerned only with the issues that are the subject of findings (f) through (m) in the trial court's order of termination of parental rights. It is clear that the trial court's decision was not based merely on her return to her mother's home and on the bathtub injury.

In addition to the findings that are the focus of appellant's argument, the court noted that appellant had been placed in foster care in order to learn proper care of her children. The court found that appellee's efforts to provide reunification services constituted a meaningful effort to eliminate the conditions that caused removal. These services included foster care and parenting instruction in a home with her children, referral to counseling and parenting classes, referral to adult education and assistance in completing necessary tasks to qualify for GED classes, visitation arrangement and transportation to facilitate visitation, and referral to housing assistance. The court noted that appellant had no visible means of supporting her three children, that she admitted that she did not know how she would take care of them, and that she did not contend that they could be returned safely to her care at the time of the termination hearing. The court concluded, based upon appellant's record of non-compliance with its orders over a period of almost thirty months, that the children would not be able to return to her custody within a time frame to meet their developmental needs.

In this case, we are not left with a definite and firm conviction that a mistake has been made. We hold that the trial court was not clearly erroneous in finding that appellant failed to remedy the conditions which caused removal of her children in spite of meaningful efforts by appellee to provide services.

Finally, appellant challenges the constitutionality of the Arkansas statutes permitting the termination of her parental rights. Appellant points to the requirement of Ark. Code Ann. § 9-27-338(a)(1) that the trial court shall hold a permanency planning hearing no later than twelve months after the date the juvenile enters an out-of-home placement. She complains that the statute

arbitrarily and capriciously places a time limit on parental rights and denies parents their due process rights. She argues that section 9-27-338 has no reasonable relation to the goals of section 9-27-302, which mandates that the courts implement liberal construction in achieving the purposes of the termination-of-parental-rights statutes.

■ In response to appellant's constitutional challenge, we note that it is not preserved for our review. Appellant does not demonstrate that her arguments were fully developed before the trial court. The abstract shows no mention of the statute until appellant's motion for directed verdict, when she simply stated that the law was arbitrary and capricious in requiring the procedure to go forward and that it did not serve the best interests of her children or the children of Arkansas. Because this issue was not fully developed at the trial-court level, it is not preserved for appellate review. *Omni Holding & Dev. Corp. v. 3D S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). It is well settled that with the notable exception of matters involving subject-matter jurisdiction, we will not consider issues raised for the first time on appeal, even where the issue is a matter of constitutional magnitude. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001); *Burke v. Strange*, 335 Ark. 328, 983 S.W.2d 389 (1998).

■ Furthermore, we recognize that Arkansas Code Annotated section 16-111-106 requires that the Attorney General be notified of any declaratory judgment action involving a constitutional challenge to any statute. *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Here, appellant failed to provide such notice to the Attorney General. It is generally reversible error when the Attorney General fails to receive notice of a constitutional attack on a statute. *Olmstead v. Logan*, 298 Ark. 421, 768 S.W.2d 26 (1989); *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 29 (1982), *cert. denied*, 462 U.S. 1111 (1983). This general rule has not been applied in some exceptional circumstances, those being where all the issues have been briefed and argued by litigants who are clearly adversarial. This case is not such an exceptional situation. Even if appellant had argued her constitutional claim to the trial court, the record does not reveal that either the Attorney General was notified of the State's right to be represented in the proceeding, or that the issues were otherwise adequately argued or

briefed by truly adversarial parties. Therefore, we do not consider the constitutional challenge on this appeal. *See Reagan, supra*; *Olmstead v. Logan, supra*.

We affirm.

BIRD and BAKER, JJ., agree.