ARKANSAS DEPARTMENT of HEALTH and HUMAN
SERVICES *v.* Steven MITCHELL and Sarah Mitchell

CA 07–427                                        263 S.W.3d 574

Court of Appeals of Arkansas
Opinion delivered September 26, 2007

*Gray Allen Turner*, Office of Chief Counsel, for appellant.

*Glen Hoggard*, for appellee.

*Sharron P. Glaze*, attorney ad litem, for the minor children.

KAREN R. BAKER, Judge. DHHS has appealed from an order of the Izard County Circuit Court dismissing its petition to have the three children of appellees Steven Mitchell and Sarah Mitchell declared to be dependent-neglected. We affirm.

E.M. was born in May 2002, J.D.M. in April 2004, and C.M. in December 2006. Steven was a schoolteacher who was charged with sexual offenses against some of his students, seventeen-year-old males. On August 23, 2005, the Izard County Circuit Court entered a judgment and disposition order based on a negotiated plea of guilty, finding that Steven was guilty of two counts of sexual assault in the second degree with a victim under the age of eighteen. He was required to register as a sex offender.

On December 29, 2006, Steven and Sarah agreed to a safety plan created by DHHS. Steven agreed not to babysit any child, including his own children; not to assist any child in any hygiene process; and not to hold any position in the community that allowed him unsupervised contact with any minor. The safety plan also stated that Steven would be supervised at all times while in the presence of a child and that, if appellees failed to follow the plan, the children would be placed into foster care. It also stated: "Mrs. Sarah Mitchell will ensure that Mr. Steven Mitchell is not left alone with any of the children unless there is another adult present and that adult must know about Mr. Mitchell's past child sexual abuse history."

On January 2, 2007, DHHS filed a petition for an emergency order finding the children to be dependent-neglected because they were at substantial risk of serious harm. It asked for an ex parte order to provide "specific appropriate safeguards for the protection of the juveniles if the alleged offender has a legal right to custody or visitation with the juveniles or a property right allowing access to the home where the juveniles resides [sic]." Attached to the petition was an affidavit by Michael Fitch, a DHHS employee, alluding to Sarah's alleged failure to protect the

children. That same day, the circuit court entered an ex parte order finding probable cause to believe that the children were dependent-neglected. The court set a probable-cause hearing on January 3, 2007, and an adjudication hearing on February 7, 2007.

In their responses to DHHS's requests for admissions, Steven and Sarah admitted that he had pled guilty to two counts of sexual assault in the second degree with a victim under the age of eighteen and that he was ordered to register as a sex offender. They also admitted that, after Steven informed Sarah that he had negotiated the guilty plea, Sarah had allowed Steven to be alone with the parties' children.

At the February 7, 2007 hearing, DHHS chose to stand on the pleadings and did not call any witnesses (including Fitch) or present any evidence. DHHS's attorney, David Fuqua, summed up his case as follows:

> I sent requests for admissions out to both Mr. and Mrs. Mitchell and I think the substance of the admission[s] are that Mr. Mitchell is a convicted sex offender. Mrs. Mitchell knew of that and after knowing of that she allowed him unsupervised contact with their children. And I think that's the facts of the case. So the department is asking the court to find that Mrs. Mitchell is guilty of failure to properly supervise the children by allowing them to be in the unsupervised custody of a convicted sex offender, their father.

Fuqua argued that the children were at substantial risk of harm as a result of sexual abuse or sexual exploitation and that Sarah had failed to take reasonable action to protect them. He asked for a finding of dependency-neglect against Sarah with a safety plan ordering that Steven not have unsupervised contact with the children. Steven's criminal file was not made a part of this record.

An attorney ad litem appeared at the hearing on behalf of the children. She stated that she was bothered by the lack of proof and was unaware of any statute providing that a child is automatically dependent-neglected whenever they are living in the home with a registered sex offender.

After the trial court denied appellees' motion for directed verdict, Sarah testified. She said that she believed that her children were safe while in the care of Steven and that, because they were her first priority, she would leave him immediately if she thought they were in harm's way. She said that, since August 2005, as a

condition of the plea agreement, Steven had been in counseling. Sarah said that Steven told her that he did nothing to the students and that she believed him. She stated that she and her husband decided that he should accept the plea agreement so that he would not go to prison and would be there to help her raise their children. She also said that, after a jury had been seated in his criminal trial, she and Steven had been informed that there were jurors who had already decided that he was guilty. Sarah discussed in great detail the close relationship that she, Steven, and the children have with the children's grandparents. She said:

> My children are absolutely the most important thing in my life. I will do everything in my ability to protect my children. My parents and my husband's parents are vigilant and caring grandparents. If they thought anything was happening to their grandchildren I feel like I have a relationship with them such that they would come to me and say "we believe this, this is strange. This child is doing this."

Sarah was adamant about her children being safe and said that she considered herself a vigilant parent; that she had seen nothing to indicate that Steven was molesting her children; and that, if she did see such signs or if her children told her, she "would be out of that house immediately." Sarah stated that she had signed the safety plan only to prevent having her children taken from her. She testified that, although the safety plan had made her life "hell," she had followed it "to a tee" so that her children could stay in her home.

Elizabeth Cooper, a DHHS worker in Izard County, testified that she had been assigned to this case and had visited appellees' home. She stated that she believed Sarah's statement that she would leave Steven if the children were in danger. She said that, when she was at their house, E.M. said "Daddy doesn't do diaper duty," which indicated that they were following the plan. She stated that she believed that appellees were doing everything that DHHS had asked of them since the safety plan was put in place, even though it was a hardship. She stated that she had not removed the children from their parents' care because she did not have grounds to do so.

At the conclusion of the hearing, appellees renewed their motion to dismiss. The attorney ad litem stated that she was not in a position to make a recommendation as to whether the court should find dependency-neglect because Fitch, who signed the

affidavit, did not testify. The court found that DHHS did not meet its burden of proving by a preponderance of the evidence that the children were in imminent danger merely because Steven had been convicted of two sexual offenses and was a registered sex offender. On February 12, 2007, the court entered a dismissal order directing DHHS to close its case. DHHS filed a notice of appeal.

DHHS argues on appeal that the trial court erred in refusing to find that the children were dependent-neglected because they were, as a matter of law, at substantial risk of harm because their mother had left them in the care of their father, who had pled guilty to sexual assault of teenage boys.[1] The juvenile code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2007). On appeal from a trial court's ruling in a dependency-neglect case, we will not reverse unless the trial court's findings are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Ark. Dep't of Human Servs. v. McDonald*, 80 Ark. App. 104, 91 S.W.3d 536 (2002). In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Maxwell v. Ark. Dep't of Human Servs.*, 90 Ark. App. 223, 205 S.W.3d 801 (2005). Additionally, in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Id.*

A dependent juvenile is defined in part as "any juvenile who is at substantial risk of serious harm as a result of . . . (ii) Sexual abuse; . . . (iv) Sexual exploitation . . . ." Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2007). "Neglect" includes a parent's failure to take reasonable action to protect the juvenile from sexual abuse or sexual exploitation when the existence of this condition was known or should have been known. Ark. Code Ann. § 9-27-303(36)(A)(iii) (Supp. 2007).

DHHS's entire case is premised on the assumption that it conclusively established that Steven assaulted the teenagers because he accepted a plea agreement and that this fact, in and of itself, requires a finding that the children are dependent-neglected because Sarah left them in their father's care before the safety plan

---

[1] DHHS appears to argue that the children should have been found to be dependent-neglected as to *both* parents. However, at the hearing, DHHS focused only on Sarah.

was implemented.[2] Even if we were to agree that Steven's guilty plea conclusively established that he assaulted the teenagers, we decline to hold that this fact alone is sufficient to establish that the trial court erred in finding that DHHS had not met its burden of proof. DHHS argues that, because, as a group, sex offenders are more likely than any other type of offender to be re-arrested for a new sexual assault, Sarah's children are, as a matter of law, dependent-neglected as a result of having been left alone with Steven, citing *Ark. Dep't of Human Servs. v. Bixler*, 364 Ark. 292, 219 S.W.3d 125 (2005). We disagree.

■ In that case, the offender, the children's step-grandfather, had been convicted of sexually abusing a family member (his niece), and DHHS put on evidence that one of the children had exhibited unusual behavior that cast suspicion on the offender; the agency did not simply rely on a legal conclusion. DHHS also cites *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005), in which the supreme court affirmed the termination of the mother's parental rights because, among other things, she married a convicted sex offender who, as a condition of his parole, could not have unsupervised contact with minors. Again, that case was fully litigated, and the mother's marriage was only one of many factors considered by the court. Here, other than appellees' admissions that Steven pled guilty, DHHS offered no evidence that appellees' children are dependent-neglected. In fact, Steven's judgment and commitment order, and rules of probation, which DHHS could have provided, are not in the record.[3]

---

[2] DHHS's assumption is faulty, in light of the current state of Arkansas law as to the collateral-estoppel effect of a guilty plea in a subsequent civil proceeding. In *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999), the supreme court overruled prior case law and held that the criminal conviction of a life-insurance beneficiary of first-degree murder of the insured following a trial collaterally estopped the retrial of certain issues in a later civil trial concerning the disposition of the proceeds of the insurance policy. The court cautioned that it did not address the issue of collateral estoppel for criminal convictions other than murder and that it did not overrule *Washington National Insurance Co. v. Clement*, 192 Ark. 371, 91 S.W.2d 265 (1936) (holding that a judgment in a criminal prosecution for DWI did not bar a subsequent civil proceeding founded on the same facts).

[3] In its statement of the case, DHHS states: "The Mitchells did not comply with the safety plan." Also, DHHS says in its brief that "Sarah knowingly violated this safely [sic] plan agreement." We find no support in the record for these assertions. Although Sarah admitted

The circuit court was correct in holding that DHHS did not meet its burden of proof.

Affirmed.

MARSHALL and MILLER, JJ., agree.

---

having left the children with Steven after his guilty plea and before the implementation of the safety plan, she adamantly denied having done so afterward.