KENNETH S. HIXSON, Judge
Appellant Steven Kohlman appeals from the termination of his parental rights to his children J.K., As.K., Au.K., and B.K., who range in age from three to seven years old.[1] On appeal, Steven argues that he was denied due process because he was *597 not made a party or offered services until the petition to terminate his parental rights was filed, and he also argues that the termination order should be reversed because there was insufficient proof of statutory grounds or that termination was in the children's best interest. We affirm.
We review termination-of-parental-rights cases de novo. Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2015); M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. Anderson v. Douglas , 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Yarborough v. Ark. Dep't of Human Servs. , 96 Ark. App. 247, 240 S.W.3d 626 (2006).
This case was initiated by appellee Arkansas Department of Human Services (DHS) when it filed a petition for emergency custody of the children on April 4, 2016. The petition named Kathy as the children's mother and Steven as their putative father. An attached affidavit of a family-service worker stated that it had been reported that the children had been left with a babysitter for three days and that Kathy was supposed to get them but never showed up. It was also reported that Kathy used drugs. The worker made contact with the babysitter and found that the children were safe and being cared for by her. The babysitter had already made arrangements with the children's paternal grandfather, Robert Kohlman (appellant's father), for Robert to pick the children up and take them to his home. At that time, DHS decided that it would allow Robert to take his grandchildren to his home. However, before Robert arrived to get the children, Kathy took the children from the babysitter and went to a motel under a false name. On the next day, the family-service worker located the children at the motel, and they were again in the care of the babysitter. Kathy was away from the hotel room, but she returned and was drug tested. Kathy tested positive for multiple controlled substances including methamphetamine, THC, and opioids. The babysitter also tested positive for drugs. The worker made contact with Steven, who had recently been arrested and incarcerated for failure to appear. Steven stated that he had left the children in the babysitter's care prior to his incarceration but that he did not know she used drugs. The affidavit also stated that DHS had a previous history with the family. In the previous protective-services case, there had been true findings against Steven for inadequate supervision of J.K. in 2011 and physical abuse committed against As.K. in 2012.
On April 4, 2016, the trial court entered an ex parte order for emergency custody of the children. In the emergency order, the trial court found that removal of the children was necessary to protect their health and safety.
A probable-cause order was entered on April 27, 2016. The probable-cause order stated that Steven was the putative father and had appeared at the probable-cause *598 hearing. The trial court ordered Steven to submit to genetic testing.
The trial court entered an adjudication order on June 7, 2016, finding the children to be dependent-neglected. The goal of the case was a concurrent goal of reunification and permanent relative placement. A review order was entered on December 14, 2016, wherein the goal of the case was changed to reunification with the concurrent goal of termination of parental rights and adoption. In the review order, the trial court found that Kathy had no income, no transportation, had not complied with the case plan, and had consistently tested positive for illegal drugs. The review order indicated that Steven was living with his father and had not availed himself of services. The trial court did, however, indicate that Steven had submitted to random drug screens (which were negative) and had exercised visitation with the children (but had appeared at visitation intoxicated).
In a permanency-planning order dated February 6, 2017 (but not entered until March 28, 2017), the trial court found that DNA testing had confirmed Steven to be the children's father, and thus the court found Steven to be the legal father. The trial court appointed Steven counsel. The trial court found that both parents had not availed themselves of services and that Kathy continued to test positive for illegal drugs. The case goal was changed to termination of parental rights and adoption.
On March 15, 2017, DHS filed a petition to terminate both parents' parental rights. The termination hearing was held on July 10, 2017.
On August 16, 2017, the trial court entered an order terminating the parental rights of both Kathy and Steven. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i) & (ii). With respect to both parents, the trial court found clear and convincing evidence of the following three statutory grounds under subsection (b)(3)(B):
(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
....
(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
....
(ix)(a) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
(3)(A) Have subjected any juvenile to aggravated circumstances.
(B) "Aggravated circumstances" means:
(i) ... [A] determination has been made by a judge that there is little likelihood that services to the family *599 will result in successful reunification.
At the termination hearing, it was established that Steven had been incarcerated for a total of nine or ten months during the fifteen months since emergency removal of the children. Most recently, Steven was in prison between December 14, 2016, and May 23, 2017, for violating the terms of his probation related to a 2012 conviction for aggravated assault committed against Kathy. For the probation violations, Steven was sentenced to three years in prison followed by a three-year suspended imposition of sentence. He was paroled on May 23, 2017. After his release, Steven moved into his father's house where he continued to reside as of the termination hearing held on July 10, 2017.
DHS family-service worker Tehrina Means was assigned to this case. Ms. Means indicated that a case plan was prepared by DHS about a month after the case began, wherein Steven was directed to maintain contact with DHS, submit to drug screens and a psychological evaluation, and take parenting classes. Steven was further directed to maintain stable housing, income, and transportation. Ms. Means indicated that Steven did submit to drug screens. These drug screens were performed on May 5, 2016, September 9, 2016, and June 7, 2017, and on each screen Steven was negative for both drugs and alcohol. Ms. Means also testified that, during the periods when he was out of jail, Steven visited his children on a fairly consistent basis and he was very loving with the children during the visits. However, Steven had shown up to visitation intoxicated. Ms. Means acknowledged that Steven was presently employed,[2] that he was "pretty good" with acquiring transportation, and that he was living with his father. She also stated that, other than when he was incarcerated, Steven had consistently lived in his father's house.
Ms. Means recommended termination of both Steven's and Kathy's parental rights.[3] Ms. Means indicated that she did not think Steven had made any progress during the case. She stated that Steven had failed to complete services, which included parenting classes and submitting to a psychological evaluation. Ms. Means also indicated that one of her biggest concerns was the fact that Steven continued to have an alcohol problem, for which he had not received treatment. Ms. Means did testify, however, that Steven had told her he had tried to avail himself of services while in prison, but they were not made available to him. She also conceded that Steven had been in contact with DHS since his release from prison.
Ms. Means thought that, due to Steven's minimal contact with his children and failure to make progress in the case, further services would not result in successful reunification. She thought that the children would be at risk of harm if returned to Steven, and that termination of parental rights and adoption was in the children's best interest. Ms. Means testified that the children were adoptable.
Steven's father, Robert Kohlman, testified on Steven's behalf. Robert testified that he was willing to let Steven's children live with him when this case began and that he still wanted the children to be in his home. Robert stated that he lives in a clean and appropriate three-bedroom house with Steven and another of Robert's *600 sons. Robert stated that he loves his grandchildren and that they call him "papa." Robert indicated that Steven was doing well since being released from prison and that Steven was focused only on getting his children back. Robert stated that his house is alcohol-free, and he thought that Steven was capable of maintaining sobriety.
Steven testified on his own behalf, and he stated that, since being released from prison, he has had three or four visits with his children and that those visits have gone great. Steven stated that he is bonded with his children and that if given more time he could do what was necessary to show he is fit to care for them. He indicated that, while in prison, he signed up for parenting and anger management classes, but he was put on a waiting list and was never afforded the services. However, he expressed a willingness to comply with services and had been contacting DHS in an attempt to arrange them. Steven acknowledged that he had a drinking problem early in the case, and he admitted that he had shown up intoxicated to a visit with the children. However, he testified that he has not been intoxicated during his visits since being released from prison and that he was willing to undergo a drug-and-alcohol assessment. Steven stated that he had a strong support system and had no intention of getting into trouble. He stated that he was employed before going to prison and that he is employed now. Steven asserted that he has a good home environment, and he did not think the children would be in danger if returned to him.
In this appeal, Steven first argues that he was denied due process because he was not made a party to the case or offered DHS services until DHS sought to terminate his parental rights. However, Steven failed to raise any due-process argument to the trial court. We have held that that we will not consider issues raised for the first time on appeal, even constitutional ones. Maxwell v. Ark. Dep't of Human Servs. , 90 Ark. App. 223, 205 S.W.3d 801 (2005). Because no specific due-process argument was raised below, this point is not preserved for our review. See Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, 538 S.W.3d 842, 2017 WL 4800490.
Steven's next argument is that none of the three statutory grounds relied on by the trial court were sufficient to support termination of his parental rights. He argues that the "failure to remedy" ground was not satisfied because he had no responsibility for the conditions that caused the children's removal. As for the "subsequent factors" and "aggravated circumstances" grounds, Steven contends that these were not proved because he never received meaningful DHS services.
Only one ground is necessary to terminate parental rights. Wafford v. Ark. Dep't of Human Servs. , 2016 Ark. App. 299, 495 S.W.3d 96. We hold that the trial court did not clearly err in finding that Steven had subjected the juveniles to aggravated circumstances, meaning that there is little likelihood that services to the family will result in successful reunification. See Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A) & (B). Because we conclude that DHS adequately proved "aggravated circumstances," we need not discuss the remaining two grounds found by the trial court.
In contesting the trial court's finding of "aggravated circumstances," Steven argues that he was never offered meaningful services. However, a finding of "aggravated circumstances" does not require DHS to prove that meaningful services toward reunification were provided. See *601 Ford v. Ark. Dep't of Human Servs. , 2017 Ark. App. 211 ; Draper v. Ark. Dep't of Human Servs. , 2012 Ark. App. 112, 389 S.W.3d 58. In light of Steven's persistent criminal misconduct for which he was incarcerated for the majority of this case, we hold that the proof supported the trial court's conclusion that there is little likelihood that services would result in successful reunification between Steven and his children.
The record shows that, in the previous protective-services case, Steven was found to have inadequately supervised one of his children and had physically abused another. In addition, Steven was convicted of aggravated assault committed against the children's mother in May 2012, for which he had been placed on probation. When this dependency-neglect case was opened on April 4, 2016, Steven was incarcerated for failure to appear. Steven was later cited for failure to appear on additional occasions, and he was in and out of jail with his probation-revocation hearing pending. During this time, by his own admission, Steven was intoxicated during visitation with his children. On December 14, 2016, Steven pleaded guilty to violating the terms of his probation, and a sentencing order was entered sentencing him to three years in prison followed by a three-year suspended imposition of sentence. A report attached to the sentencing order stated that Steven had violated his probation by committing the new offenses of DWI and failing to report, by testing positive for controlled substances, and by failing to pay fines and fees as ordered. The trial court indicated in the report and in the sentencing order that Steven's sentence was a departure from the sentencing guidelines as a result of the aggravating factor "persistent criminal misconduct while under supervision." Although Steven was released from prison shortly before the termination hearing was held, he remained on parole and under the restrictions of a suspended sentence. According to Steven's testimony, he was in jail for a total of nine or ten months during these fifteen-month proceedings. Given the fact that Steven was incarcerated for the majority of this case and has demonstrated sustained criminal misconduct clearly indicative of an impediment to reunification with his children, we affirm the termination of his parental rights based on the trial court's finding of aggravated circumstances.
We observe that Steven also challenges the trial court's finding that termination of his parental rights was in the children's best interest. However, we conclude that the trial court did not clearly err in making its best-interest determination for many of the same reasons supporting aggravated circumstances. Steven's history with violence, alcohol, and resulting incarcerations are factors weighing in favor of the trial court's finding that the children would be at serious risk of harm if returned to Steven's custody. Moreover, there was testimony that these children are adoptable, and termination of Steven's parental rights will have the effect of achieving permanency in the children's lives. Having concluded that the trial court's findings as to a statutory ground and the best interest of the children are not clearly erroneous, we affirm the order terminating Steven's parental rights.
Affirmed.
Gruber, C.J., agrees.
Whiteaker, J., concurs.

The children's mother, Kathy Jenkins, also had her parental rights terminated; however, Kathy has not appealed.

Steven introduced a letter from his employer confirming his employment as an apartment maintenance worker since June 12, 2017.

With respect to Kathy, Ms. Means testified that Kathy had tested positive for illegal drugs throughout the case and that the children could not be safely returned to her custody.