Cite as 2024 Ark. App. 619

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-410

| | |
|---|---|
| KINTINA JODI<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered  December 11, 2024<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT<br>[NO. 28JV-23-246]<br><br>HONORABLE MARY LILE BROADAWAY, JUDGE<br><br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Kintina Jodi appeals an order of the Greene County Circuit Court adjudicating her children dependent-neglected and terminating reunification services. She challenges the sufficiency of the evidence supporting the finding of dependency-neglect regarding four of her five children, arguing that the circuit court erred in treating the children as an "amorphous group" in determining that all the children were at substantial risk of serious harm. She also argues that the evidence was insufficient to support the court's termination of reunification services. We affirm.

Jodi is the mother of MC1 (07/24/09) and her four sisters: MC2 (09/16/11), MC3 (11/15/14), MC4 (01/10/16), and MC5 (12/01/22). An affidavit by an investigator from the Arkansas State Police Crimes Against Children Division (CACD) attached to the petition for emergency custody and dependency-neglect revealed the following details. The case began on November 14, 2023, when the CACD received a hotline-report referral involving allegations of

sexual abuse. MC1 had disclosed that her stepfather, Ajai Jemnor, had been sexually abusing her since she was six years old. According to CACD Investigator Lesley Faulkner, Jemnor had sexually abused MC1 when she was between the ages of six and ten by touching, fondling, and penetrating her vagina with his hands and fingers. MC1 said that when she was between the ages of eleven and thirteen, Jemnor began "penile-vaginal penetration," "penile-anal penetration," and oral sex. MC1 said that she had disclosed the abuse to numerous family members and friends, and Faulkner was able to corroborate that at least four family members and two friends had been told about the abuse from less than a week to two years before MC1's interview with the CACD. MC1 told Faulkner that her mother "potentially caught" Jemnor sexually abusing her one night. MC1 said she was not sure if he abused her that night, but when she woke up, Jemnor was standing behind her, and Jodi was looking at them crying.

According to Faulkner's affidavit, Jemnor was arrested on November 14 and confessed to sexual acts with MC1. Jemnor also told police that Jodi had been suspicious of his relationship with MC1. He said that he and Jodi had argued about it, and one argument had ended in Jemnor's slapping Jodi's face. Faulkner expressed concern that despite numerous family members having been made aware of the abuse throughout the years, no one intervened, and the family referred to MC1 as a "bad child, a liar, and a troublemaker." The CACD requested that the Arkansas Department of Human Services (DHS) conduct a safety assessment of the family.

DHS family service worker Carrie Robinson stated in her affidavit that she met with Jodi to discuss ways she could ensure that MC1 and the other children were safe. Jodi told her that there was nothing to worry about because Jemnor had been arrested and was not at the home.

When Robinson told Jodi that he could be released and allowed to go home, Jodi had no solid plan to protect the children but said she would "watch and make sure [he] does not hurt or touch [them]." After Robinson told Jodi that she was exercising a hold on the children and placing them in foster care, Jodi talked with the four younger children but "did not express any emotions of sadness with [MC1]."

According to Robinson's affidavit, in a November 16 meeting with Jodi, Jodi's family members, Faulkner, and several DHS workers, Jodi and her family members continued to deny that they knew Jemnor had been sexually abusing MC1. Jodi denied ever having seen any inappropriate conduct between Jemnor and MC1. Even after being told that Jemnor had confessed to the abuse, Jodi and the family stated they did not know if they believed MC1. However, Jodi stipulated at the probable-cause hearing on November 21 that probable cause necessitating removal of the children from her custody existed and continued to exist.

On February 7, 2024, DHS filed a motion to terminate reunification services to all five children, asserting that aggravated circumstances existed warranting an immediate goal of adoption or relative placement. DHS alleged that Jodi had failed to protect the children from harm by Jemnor and that despite "credible disclosures from her child, statements from family members, and a confession of the abuse by the offender, [Jodi] continues to deny that the abuse has occurred." DHS argued that, given this attitude, Jodi could not protect her children from future sexual abuse. DHS asked the court to find that the children had been subjected to aggravated circumstances because there is little likelihood that services will result in successful reunification.

That same day, DHS also filed an emergency motion to terminate visits between MC1 and Jodi, alleging that, according to MC1, Jodi blamed her for the children being in foster care. The DHS supervisor stated in an attached affidavit that MC1 told her she no longer wanted to visit with Jodi but had been afraid to say so because she still wanted to see her siblings. The affidavit also reported that during a DHS home visit on January 31, 2024, Jodi told the family service worker that, despite Jemnor's confession, she did not believe MC1 that the sexual abuse had occurred. The circuit court granted the motion pending the adjudication hearing.

On March 11, the court held an adjudication hearing. At the hearing, MC1 testified that Jemnor told her that in May 2023, Jodi had seen him on top of her when MC1 was asleep. Faulkner testified that she found the allegations against Jemnor of sexual abuse, sexual contact, deviant sexual activity, and sexual intercourse true. She testified that she also made findings of neglect and failure to protect against Jodi based on statements from MC1, Jodi, and Jemnor. According to Faulkner, Jodi said that she saw Jemnor standing behind MC1 in the middle of the night and confronted him, that she had seen Jemnor leaving MC1's room in the past, and that she had suspicions about the abuse. Jemnor told Faulkner that Jodi had suspicions and had confronted him about it.

In her testimony at the hearing, Jodi again denied that she had seen Jemnor act inappropriately with MC1. She said that she "wanted to believe" MC1 about the allegations of abuse but that MC1 lies a lot. She said she did not believe it because she had not "seen it with [her own] eyes." When asked why Jemnor was in jail, she said, "Because of what they said he did." When asked again if she believed that he sexually abused MC1, she replied, "I want to

4

believe, but she lies." Finally, Jodi admitted that she had told MC1 that it was MC1's fault that the children were in foster care.

On April 2, the circuit court entered an adjudication order finding the children dependent-neglected based on sexual abuse by Jemnor against MC1 and that Jodi knew about the abuse and did not take reasonable steps to stop it. The court found that MC1 was "chronically" sexually abused for an extended period of time and that the prolonged sexual abuse caused the court to have safety concerns that prevented placement with or return of custody to Jodi. In its letter opinion, which the court incorporated by reference in the adjudication order, the court recognized that MC1 had admitted lying, stealing, and getting into trouble in the past, noting this would not be unusual for a child with MC1's history of trauma. The court specifically found MC1's testimony regarding the "repeated and systematic sexual abuse" credible. The court recognized that Jodi continually referred to MC1 as a "liar," showed no empathy toward her for the abuse she had sustained, and exhibited no remorse for her refusal to believe MC1 or take action to protect her. Rather, the court found that Jodi chastised MC1 for the family not being together, claiming that it was her fault. The court found that Jodi knew about the abuse and took no action to stop it or prevent it. The court stated that in light of Jodi's "indifferent and cavalier attitude regarding abuse to [MC1], there is no reason to believe that [Jodi] would protect her other daughters from similar abuse." The court discontinued all visits between MC1 and Jodi and allowed supervised time between Jodi and the other four children. The court set concurrent goals of adoption and guardianship with a relative.

The court also found by clear and convincing evidence that aggravated circumstances existed because MC1 was subjected to extreme and repeated sexual abuse and that there was

little likelihood that continued services to the family will result in a "change of attitude" that would provide for a successful reunification; accordingly, it granted DHS's motion to terminate reunification services. Jodi filed this appeal.

We turn first to Jodi's challenge to the sufficiency of the evidence supporting the court's finding of dependency neglect regarding MC2, MC3, MC4, and MC5.[1] A dependent-neglected juvenile includes any juvenile who is at substantial risk of serious harm as a result of abuse, neglect, parental unfitness, or sexual abuse or exploitation to the juvenile or a sibling of the juvenile. Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2023). Under section 9-27-303(37)(A), the definition of neglect includes "[f]ailure to take reasonable action to protect the juvenile from . . . sexual abuse . . . when the existence of this condition was known or should have been known[.]" Ark. Code Ann. § 9-27-303(37)(A)(iii). Additionally, a finding of dependency-neglect occurs without reference to whether a particular parent committed the acts or omissions that caused the dependency-neglect; rather, the juvenile is simply dependent-neglected. *Araujo v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 181, at 4, 574 S.W.3d 683, 686. Because of this, the focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. *Link v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 569, at 9, 680 S.W.3d 724, 729. Further, only one ground is necessary to support a dependency-neglect finding. *Garner v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 328, at 8, 603 S.W.3d 858, 862.

---

[1]Jodi does not contest the court's order finding MC1 dependent-neglected.

The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof. *Raynor v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 263, at 7, 646 S.W.3d 406, 411. Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(A)(ii) (Supp. 2023). We will not reverse the circuit court's findings unless they are clearly erroneous. *Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 5, 389 S.W.3d 627, 629. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Ark. Dep't of Hum. Servs. v. Walker*, 2016 Ark. App. 203, at 2, 489 S.W.3d 214, 216. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *McCord v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 244, at 8, 599 S.W.3d 374, 379.

Jodi argues that the court should not have considered MC1 and her four siblings as an "amorphous group" such that MC1's status as dependent-neglected dictated a dependency-neglect finding for her siblings. She cites as an example *Arkansas Department of Health and Human Services v. Mitchell* in which we affirmed the circuit court's dismissal of DHS's petition to declare a father's three children dependent-neglected based solely on his guilty plea to sexually abusing his minor students at school. 100 Ark. App. 45, 49–50, 263 S.W.3d 574, 577–78 (2007). *Mitchell* is distinguishable because in that case, both parents denied that the father had abused the students and said that he had accepted a plea to prevent his going to prison. *Id.* at 48, 263 S.W.3d at 574. In addition, the children's mother and the DHS family service worker testified that a plan to protect the children was in place and being followed, and the mother was adamant that the children were safe. The mother testified that she considered herself a vigilant parent,

that she had seen nothing to indicate that the father was molesting her children, and that, if she did see any signs or if her children told her, she "would be out of that house immediately." *Id.* at 48, 263 S.W.3d at 574. Here, Jemnor admitted sexually abusing MC1 in the house where all five children lived; Jodi continued to deny that the abuse had occurred despite this confession; and she had failed to protect MC1 from chronic, prolonged, and extreme sexual abuse. Finally, in *Mitchell*, the circuit court found that DHS had not met its burden to prove that the children were in imminent danger merely because of the guilty plea. This is the opposite of what the court found here—that the children were in danger based on Jemnor's admission to the abuse, Jodi's complete denial of the abuse, the CACD investigator's findings and testimony, and Jodi's failure to recognize the problem and present a solution.

Jodi also cites *Haney v. Arkansas Department of Human Services*, 2017 Ark. App. 437, 526 S.W.3d 903, in which we reversed a dependency-neglect finding of an after-born sibling where the finding was based solely on the older siblings being in foster care without any assessment of the level of risk posed to the after-born sibling. Additionally, in *Haney*, we said that the evidence demonstrated that the parents were compliant with the older siblings' case and had acknowledged responsibility for the cause of removal. *Id.* at 6–7, 526 S.W.3d at 907. That is not the case here.

Here, the court conducted a full and complete hearing and made detailed findings, including credibility findings, of all the circumstances surrounding the case. Of note, the court specifically found that MC1 was chronically sexually abused for an extended period of time and that Jodi knew about the abuse and did not take reasonable steps to stop it. *See Eason v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 507, 423 S.W.3d 138 (affirming siblings' dependency-

neglect finding because evidence demonstrated that appellant would fail to protect them). Moreover, the court found that Jodi refused to believe MC1 had been sexually abused despite Jemnor's confession. The court was concerned with Jodi's attitude and lack of empathy toward MC1 regarding the abuse and did not believe she could or would adequately protect the other children. Thus, the circuit court did not find MC1's siblings dependent-neglected solely on the basis of MC1's status as dependent-neglected. We uphold the circuit court's finding of dependency-neglect.

Jodi also challenges the sufficiency of the circuit court's order terminating reunification services. In order to grant a motion for no reunification services, a circuit court must find by clear and convincing evidence that termination of services is in the children's best interest and that the petitioner has proved at least one ground—here, chronic sexual abuse and a determination that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-365(c)(2)(A)(iv) & (v) (Repl. 2020). On appellate review, we will not reverse a circuit court's no-reunification-services order unless the findings are clearly erroneous. *Johnson v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 296, at 5, 667 S.W.3d 582, 586.

Jodi contends that there was insufficient evidence to support the aggravated-circumstances finding because, even if she had not at first believed that Jemnor had sexually abused MC1, she "want[ed] to believe her" and had made improvements since the case first opened even when faced with the "trauma of DHS's involvement in their lives." She also argued that the evidence did not demonstrate that she knew about the abuse or that she had "allowed" sexual abuse to continue in the home for "years." Finally, she argued that although she had

9

initially said hurtful things to MC1, she had nonetheless sought counseling, which demonstrates her desire to protect her children.

The court specifically noted that Jodi referred to MC1 as a "liar," showed no empathy toward her for the abuse she had sustained, and exhibited no remorse for her refusal to believe MC1 or take action to protect her. The court also found by clear and convincing evidence that aggravated circumstances existed because MC1 was subjected to extreme and repeated sexual abuse, and there was little likelihood that continued services to the family will result in a "change of attitude" by Jodi that would foster a successful reunification. Much of the evidence supporting the court's findings comes from Jodi's own testimony. Jodi is essentially asking us to reweigh the evidence, which we will not do. Evaluation of the credibility of the witnesses is for the circuit court. *McCord*, 2020 Ark. App. 244, at 8, 599 S.W.3d at 379. We hold that the court's decision is not clearly erroneous.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.